# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SARAH KAY HEWITT, )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-265-RAW-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
       Defendant. )

## REPORT AND RECOMMENDATION

The claimant Sarah Kay Hewitt requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born July 5, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 36). Her education includes two years of college, and she has worked as a billing clerk (Tr. 25, 221). The claimant alleges she has been unable to work since an amended onset date of March 27, 2012, due to osteoarthritis, diabetes, and neuropathy of the hands and feet (Tr. 220).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 27, 2013. Her applications were denied. ALJ Kenton Fulton held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 22, 2014 (Tr. 14-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could stand or walk for up to two hours of an eight-hour workday, sit for up to six hours of an eight-hour workday, and could frequently handle, finger, and feel bilaterally (Tr. 20). The ALJ thus concluded that the claimant could return to her past relevant work as a billing clerk (Tr. 25).

## Review

The claimant argues that the ALJ erred by: (i) failing to account for her nonsevere mental impairments throughout the evaluation, and (ii) failing to properly evaluate the opinion of her treating nurse practitioner. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's nurse practitioner, and that the decision of the Commissioner should be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, degenerative joint disease of the knees, fracture of the right wrist, status post closed reduction and percutaneous pinning, and hypertension (Tr. 16). Medical records reflect that the claimant had experienced pain in both knees due to arthritis, and in 2010 the range of motion was normal but there was a "crunchy" sound in the right knee (Tr. 281). In July 2013, the claimant was hospitalized with acute renal failure but was discharged after renal functions had returned to near normal (Tr. 366-367).

The claimant largely received treatment at the Good Shepherd Community Clinic because it was a free clinic. She was mostly seen by a nurse practitioner, Margaret Scifre, MS, APRN-CNP, FNP-BC. Treatment notes reflect medication management, but

also contain repeated notes regarding the claimant's neuropathy, including pain in her hands and feet (Tr. 404-406, 411-430, 447-484).

On November 6, 2012, Nurse Practitioner Margaret Scifres sent a letter addressed "To Whom it May Concern," in which she stated that the claimant had been a patient at Good Shepherd Community Clinic for the past year, and that she had type II diabetes with neuropathy, causing severe foot pain on a daily basis (Tr. 407). Ms. Scifres also stated that the claimant was able to walk five minutes, but then must rest twenty to thirty minutes, and further noted that the arthralgia in her knees caused her knees to give out unexpectedly sometimes (Tr. 407). Ms. Scifres then opined that the claimant could not work forty hours a week, fifty weeks a year without being absent at least one day per week (Tr. 407).

A July 23, 2011 consultative exam by William Cooper, D.O., resulted in an assessment that the claimant had arthritis (rheumatoid versus osteoarthritis) of the feet, knees, and fingers, as well as hypertension (Tr. 287). She had full grip strength, normal heel/toe walking and a safe/stable gait, and her back was non-tender with full range of motion (Tr. 287).

On June 14, 2013, Dr. Cooper again examined the claimant, this time noting that she had pain with range of motion testing of the fingers of both hands and both knees, with no swelling or deformity, and full grip strength, as well as the ability to perform both gross and fine tactile manipulation (Tr. 433). He also noted hypersensitivities of plantar surfaces of both feet, but normal gait with normal heel/toe walking (Tr. 433). He

assessed her with osteoarthritis, diabetes, diabetic neuropathy, history of renal failure status post dialysis, and discontinuation of causative medication (Tr. 433).

X-rays of both knees on June 17, 2013 revealed near complete loss of joint space in both knees, worse in the bilateral medial compartments (Tr. 444). The claimant was assessed with severe end stage degenerative joint disease bilateral knees (Tr. 444). On August 24, 2013, the claimant presented to the emergency room following a fall backwards which resulted in her landing on her wrist and fracturing it, requiring surgery (Tr. 486-507).

In his written opinion, the ALJ summarized the medical evidence in the record, as well as the claimant's hearing testimony. The ALJ, however, found that Ms. Scifres was not an acceptable medical source, which he stated reduced the weight due her opinion, citing to Soc. Sec. Rul. 06-03p. He further concluded that her statements regarding the claimant's ability to walk no more than five minutes before needing to rest and that she would need to walk at least five minutes after sitting for an hour were contradictory. Moreover, he concluded that the claimant's testimony that she could make grocery trips of fifteen to twenty minutes contradicted Ms. Scifres' opinions regarding her ability to walk (Tr. 24). Accordingly, he assigned her opinion little weight. Furthermore, the ALJ only found the claimant's allegations of knee pain to be somewhat credible, despite the severe degenerative changes documented by x-rays and the history of falls (which resulted in her fractured wrist) because "there is little indication that the claimant frequently complained of worsening knee pain or instability in clinic visits, suggesting that she considered her symptoms less serious than she alleges" (Tr. 22).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Scifres herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, at *4-5; 20 C.F.R. § 404.1527(d). *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted].

Here, the ALJ did not apply these factors, instead initially discrediting her opinion because she is an "other source," then also reading her opinion as contradictory while ignoring entirely her opinion regarding the claimant's likelihood of missing one day of

work per week. This appeared to be an effort to bolster the ALJ's attempt to discredit or minimize the evidence of the claimant's objectively-documented severe end state degenerative joint disease bilateral knees as well as the repeated evidence of neuropathy of the hands and feet resulting from her diabetes. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984). Because these errors directly relate to findings regarding the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

On remand, the ALJ should evaluate *all* the evidence in the record related to both the claimant's physical *and* mental impairments, as well as the combined effects of these impairments, as required by the law and regulations. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**